## BALTIMORE & OHIO R. R. CO. et v MENTOR HARBOR CO. et

Common Pleas Court, Lake Co.

No. 15922. Decided Sept. 28, 1938.

Baker, Hostetler, Sidlo & Patterson, Cleveland, and Alvord, Blakely & Ostrander, Painesville, for plaintiffs.

Herbert S. Duffy, attorney general, Columbus, Tuttle & Hubbard, Painesville, Julian M. Andrus, Sawyer, Cummings, Mook, Strong & Douglas, Cleveland, H. U. Daniels, Painesville and James H. Murphy, Cleveland, for the various defendants.

## OPINION

By SLOCUM, J.

This case is an action for personal judgment and foreclosure of a mortgage on two parcels of land, the first containing some 666 acres of land and the second 20.82 acres, there being released from the first parcel some forty acres by the plaintiffs. The amount sought in the judgment amounts to $1,202,486 as of December 15, 1937, this amount including interest and advances for taxes. There are some 96 defendants in the case, but the purchasers of two lots, namely, the defendants Hanks, Moore and Olsaver, are the only ones contesting the proposed decree.

Counsel for the plaintiff railroads and the above mentioned defendants filed voluminous briefs and there was also filed an agreed stipulation of facts and many exhibits.

A brief history of the case leading up to this foreclosure proceeding indicates that on December 14, 1927, the plaintiff railroads sold to one of the defendants, The Mentor Harbor Company, some 687 acres of land that is now known as The Mentor Harbor Development. The purchase price was $1,030,500, of which $206,100 was paid in cash and the balance represented by a series of notes maturing over a five year period and secured by a purchase money mortgage on the above parcels of land. The only payment applied to principal was the sum of $36,000, which was the consideration for the release of the aforesaid parcel, referred to as "Block L". The December 14, 1931 and subsequent installments of interest are in default. About May, 1930, and for approximately a year and a half thereafter The Mentor Harbor Company sold a number of lots and two lots were sold in the Mentor Harbor Subdivision one being purchased by the defendant Hanks. There were also eight lots sold in the Mentor Harbor Re-Subdivision, one of these being purchased by the defendants Moore and Olsaver. In June, 1930, the Railroads released from the lien on the mortgage the aforesaid Block L, the lot of the defendant Hanks being included within this released portion, but only that part of the lot of the defendants Moore and Olsaver in Mentor Harbor Re-Subdivision immediately fronting on the lagoon was ever included within the mortgaged premises. The deeds to the various lot purchasers, and for the purposes of this decision the court confines itself to the above named purchasers of two lots, granted rights to the use of water ways therein constructed for navigation purposes only. There is no dispute as to the rights of the defendants to the middle of the channel upon which their respective lots abut.

The premises described in the petition constitute in part marsh land near Lake Erie which has been developed into a harbor development. An extensive system of channels has been dredged through this land. Block L, heretofore referred to, was subdivided into lots and a plat thereof recorded. The deeds to these defendants granted rights for navigation purposes in the harbor and all the channels then constructed or that were to be constructed, these channels having now been completed. The petition named these defendants as parties for the purpose of barring their rights in all of the channels, excepting the one-half of the channel upon which their lots abut, which channel to the center thereof was released from the mortgage.

These defendants filed answers in which they set forth purchase of the lots, the granting to them the right to the use of the water channels, and assert their continued right to the use of these channels for navigation purposes. These defendants claim that when the railroads released from their

mortgage a portion of the land covered by it, the channels in this development were in actual existence and were necessary for the reasonable enjoyment of the land covered by the partial release; that the plaintiffs at the time of such release, and even before the inception of the sale to the Mentor Harbor Company, had full knowledge of the kind of development to be made and that these channels were necessary for the reasonable enjoyment of the various parcels of the property; that at the time of the execution of the partial release an easement in these channels was appurtenant to the land released and therefore by virtue of said release, the railroads did release from the operation of their mortgage, these easements in the channels. The defendants also claim that from the inception of the sale of this property, the plaintiff railroads knew that it was to be developed into a harbor development; that extensive channels were to be dredged, retaining walls constructed and the land was to be subdivided into allotments and these lots offered to the public; and that they knew from the price paid and from the extensive channels to be constructed at a cost running into hundreds of thousands of dollars that these lots to be sold to the public were to be sold at high prices; and that they knew without channel rights these lots would be worth a comparatively small amount; and that they knew prior to the partial release that work was going on in the construction of channels in carrying out the plan of development and executed this release under these circumstances. These defendants further maintain that these acts constituted acts of cooperation and representation to the public that the Mentor Harbor Company had the right to grant an easement in the channels and that for the railroads to now deny the lot purchasers such rights would constitute fraud upon them and that the railroads are therefore estopped from asserting their mortgage as against the easement of these lot owners in the channels. On the other hand, the plaintiff railroad company claims that they specifically reserved their mortgage lien over these channels. They further claim that there is absolutely no evidence in the case that they did anything to lead the purchasers of lots into believing that they were getting rights over these channels and that so far as the relationship between the Mentor Harbor Company and the railroad is concerned, there is absolutely no evidence permitting it to affect in any manner the railroad's mortgage lien on the premises thereby reserved. The railroads further claim that it is not reasonable to suppose that the railroads, seeking payment of their notes would without any consideration diminish their security by releasing the channel areas which ultimately covered a considerable portion of the premises, or would in addition pay all the taxes and assessments on all the property covered by the water ways for the year 1931 and all ensuing years. They further claim that whatever plans were contemplated or intended were the plans of the Mentor Harbor Company and that it would be a hazardous equitable doctrine to hold that a mortgagee of private property which in releasing a portion thereof and expressly reserving its lien on the balance, does so at the peril of having its lien on the balance reserved displaced in favor of the rights of others who are utter strangers. The plaintiffs further contend that the right to use the channels at the pest is no greater than was the right of the Mentor Harbor Company which had agreed that the railroad's mortgage lien on the property covered by the channel was not affected and that the rights given by the Mentor Harbor Company created a mere license which is terminable and revocable at the pleasure of the mortgagee and that they are not estopped to deny the right of either the Mentor Harbor Company or these defendants to use the channels.

Counsel in their very exhaustive briefs quote no decisions of the courts in this state or any other states on easements over water ways and apparently there are no such decisions. The court therefore feels that the decisions as to

easements over lands and other analogous decisions, must therefore be looked to as authority governing this case. Among the host of decisions cited by counsel, perhaps the case of Hazeldine v McVey, et, 67 N. J. Eq. 275, is the one most nearly applicable to the facts of the case at bar. These facts may be summarized, as follows: One R conveyed a lot of land to McVey, R owning the adjoining lot. The deed granted to McVey a right of way appurtenant to the lot conveyed. The Prudential Insurance Company which held a mortgage on both lots, gave McVey a deed of release to the lot conveyed "together with the hereditaments and appurtenances thereto belonging."

The court further said:

"* * * I can not see how that force can be given to the word 'appurtenances' which counsel for the defendant contends. There are two distinct estates involved, that of the mortgagor and that of the mortgagee * * *

It would seem quite clear that when the owner of the equity conveyed to McVey and gave to him the easement in question, he affected, and could only affect, his own estate. He could not in any wise affect the paramount legal estate already subsisting in the mortgagee. When, on the other hand, the mortgagee released, he dealt with his estate, viz, the paramount legal estate and the question is whether he intended to subject that estate to the easement. If he did, he must have newly created such an easement in the estate which he held, for it did not exist, so far as he was concerned, before. It is perfectly well settled that a right of way will not be created by the mere use of the word 'appurtenances' * * * This being so, there is nothing in the deed of release upon which to contend that the easement existing in the equity of redemption was extended to the legal estate belonging to the mortgagee. The easement was indeed subsisting at the time the release was given for it had been created the day before; but it was an easement attached, and attached only, to the equity of redemption to the estate of the mortgagor and with this estate the mortgagee had no concern. * * * The very language of the release 'that the rest of the land in the said mortgage specified may remain to the said party of the first part as heretofore,' would seem to indicate that the mortgagee intended to retain to himself what he had not in terms and by unambiguous description parted with."

In the case of the **Fifth-Third Trust Co., Trustee, Appellee v Tobias Covy, Appellant, 11 OO 504**, Judge Matthews, at page 505 of the opinion announces the following doctrine:

"It is conceded that ordinarily a mortgagor has no power to create an interest in the premises superior to the mortgage. The title of his transferees terminates with the termination of his title, no matter how clear the intent to the contrary may be. If the mortgagee's title is to be affected, it must be by the mortgagee's own action and not that of the mortgagor. These fundamental principles are conceded."

The court, therefore, in the light of the above authorities and others too numerous to mention and under the facts of this case, comes to the conclusion that the plaintiffs did specifically reserve their mortgage liens over these channels in question; that there was no easement appurtenant to these lots to the said channels which was released by virtue of the said mortgage release; and that these plaintiffs are not by their course of conduct estopped from asserting their lien. The court feels that the remedy of these answering defendants, if any, is against the defendant the Mentor Harbor Company.